## Dink-Wilkerson Company et al. v. Miles et al.

(Decided May 10, 1929.)

ROBERT L. PAGE and JAMES C. CARTER for appellants.

HEBRON LAWRENCE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE McCANDLESS —Affirming.

Counsel for appellant thus states his sole contention in this court:

"This is an appeal from a judgment of the Monroe circuit court, sustaining an award made by the

Workmen's Compensation Board in favor of appellees. The board and the circuit court held that Lige Miles was killed in an accident arising out of and in the course of his employment with the Dink-Wilkerson Company. Appellant contends that at the time of the accident Miles was not so engaged, but that at said time he was on a pleasure trip or was an independent contractor."

As only issues of fact are raised, it is trite to say that the award must be sustained if there is any evidence to support it. The Dink-Wilkerson Company is a partnership, composed of George Ellis and other individuals not named in the pleadings. For a number of years this firm has been engaged in the manufacture of staves. It operates two plants, one at Carthage, Tenn., and the other at a point in Monroe county, Ky. Lige Miles was employed by the firm for several years as a general utility man. The mill shut down for the holidays on December 23, 1927. On the morning of the 24th Miles drove to Tompkinsville in his car to collect his wages. Upon his arrival he learned that Mr. Ellis was going to Carthage to look after unloading a cargo of staves and proposed to take him in his car, to which Mr. Geo. Ellis agreed. They thought it would take a day or two to unload the staves, and on the way Miles sent word to his family that he would not return that night. However, after reaching Carthage, Ellis made arrangements with another party to have the staves unloaded. Miles met two parties who wished to return to Tompkinsville and offered him $5 to transport them. It was then agreed for all to return that afternoon, the distance being about 40 miles. On the way Miles procured some moonshine liquor and all of them took a drink. However, all the occupants of the car deny that any of them were intoxicated. On the way Ellis rested Miles in driving, and while he was operating the car the steering wheel became unmanageable and the car ran out of the road and overturned, inflicting injuries upon Miles from which he died the following night. It is admitted that the company had accepted the Workmen's Compensation Act, and there is evidence that Miles had also accepted it. At any rate that matter is not questioned in this court.

As to Miles' general duties and the matters in which he was engaged at the time of his death, Mr. Ellis testified:

"Mr. Miles was employed as a laborer around your mill, I believe? A. Yes, sir.

"Q. Not as a chauffeur? A. Well he worked as equalizer, drove a team and did most anything; no, he was not especially a chauffeur.

"Q. But you paid him for all? A. Yes, sir.

"Q. Was he working under the Compensation Act about the time of his death? A. Yes, sir.

"Q. Did you go with Lige Miles to Carthage? A. I did.

"Q. What was the nature of your trip over there? A. I went over there to unload a barge of staves and to see about them.

"Q. Did any one except you and Lige go? A. No one except me and Lige went.

"Q. Did you go in your car or his? A. In his car.

"Q. Had he been driving your car most of the time or his? A. Well; drove mine part of the time and his part of the time.

"Q. Was Lige drunk at the time he was killed? A. I don't think he was.

"Q. Was you or he driving? A. I was.

"Q. When he was out driving for you did you pay the same wages you paid him when you were at home? A. Well; I paid him time.

"Q. Did you pay him for his machine? A. No; I never did.

"Q. Were you and he through with your work at Carthage when you brought Fay Bailey home from there? A. I suppose so."

Also, Mrs. Betty Miles, wife of deceased, testified without objection:

"Q. Mrs. Miles, in a deposition taken some time ago you stated that your husband worked part of the time as equalizer for the defendant and that he did anything else for him to do? A. Yes, he did anything called on him to do, took Mr. Ellis anywhere he wanted to go."

Mr. Ellis does not contradict this statement in any way. Assuming these facts to be true, as a general util-

ity man Miles was accustomed to driving Mr. Ellis and receiving the same "time" (wages) therefor as he did for the other work, though he received no extra pay for his car when it was used. On the day in question he carried Mr. Ellis in this way to Carthage, the two expecting to unload a barge of staves, and was returning in this service at the time he met his death. This is some evidence tending to show that the accident arose out of and in the course of his employment. True, the transportation of the two passengers was an independent service, but the fact that he was receiving an additional compensation for carrying them in his car did not eliminate the service he was then rendering the company.

In this view of the case it must be admitted that there is some evidence to sustain the award made by the board.

Wherefore, perceiving no error, the judgment is affirmed.